## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------- x
In re:                                             :
                                                   :
KAISER ALUMINUM CORPORATION,                       :
et. al.,                                           :
                                                   :
                 Debtors.                          :
                                                   :
------------------------------------------------- x
```

Jointly Administered Under
Case No. 02-10429 (JKF)

Chapter 11

## REQUEST BY FIRST STATE INSURANCE COMPANY, HARTFORD ACCIDENT AND INDEMNITY COMPANY, NEW ENGLAND REINSURANCE CORPORATION AND NUTMEG INSURANCE COMPANY FOR *DE NOVO* REVIEW OF FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING CONFIRMATION OF THE SECOND AMENDED JOINT PLAN OF REORGANIZATION OF KAISER ALUMINUM CORPORATION, KAISER ALUMINUM & CHEMICAL CORPORATION AND CERTAIN OF THEIR DEBTOR AFFILIATES, AS MODIFIED

First State Insurance Company, Hartford Accident and Indemnity Company, New England Reinsurance Corporation and Nutmeg Insurance Company (collectively, "Hartford"), hereby request *de novo* review by the United States District Court for the District of Delaware, pursuant to 28 U.S.C. § 157(c)(1), 11 U.S.C. § 524(g), and Rule 9033 of the Federal Rules of Bankruptcy Procedure, of the *Findings Of Fact And Conclusions Of Law Regarding Confirmation Of The Second Amended Joint Plan Of Reorganization Of Kaiser Aluminum Corporation, Kaiser Aluminum & Chemical Corporation And Certain Of Their Debtor Affiliates, As Modified* [D.I. 8226] (the "Findings of Fact and Conclusions of Law"), entered by the Bankruptcy Court on February 6, 2006, in addition to Hartford's timely filed *Notice Of Appeal Of The Order Confirming The Second Amended Joint Plan Of Reorganization Of Kaiser Aluminum Corporation, Kaiser Aluminum & Chemical Corporation And Certain Of Their Debtor Affiliates, As Modified* pursuant to 28 U.S.C. § 158(a) and Rules 8001 and 8002 of the Federal Rules of Bankruptcy Procedure filed on February 15, 2006 [D.I. 8278].

Hartford objects to Section II(G)(1) of the Findings of Fact and Conclusions of Law on the grounds set forth in the *Certain Insurers' Objection To The Alleged Statutory Preemption Of Insurers' Rights And Debtors' Obligations Under The Insurance Policies*, filed on December 2, 2005 [D.I. 7839], a copy of which is attached hereto and incorporated herein as Exhibit "A."

This Request is timely pursuant to Rule 9033 of the Federal Rules of Bankruptcy Procedure.

Dated: February 16, 2006

<div style="margin-left:40%">

Respectfully submitted,

 /s/ Jennifer L. Scoliard          
Joanne Wills (#2357)
Jennifer L. Scoliard (#4147)
Klehr, Harrison, Harvey, Branzburg & Ellers LLP
919 Market Street, Suite 1000
Wilmington, DE 19801
Tel: (302) 426-1189
Fax: (302) 426-9193

Duane D. Morse
James R. Wrathall
Wilmer Cutler Pickering Hale and Dorr LLP
2445 M Street NW
Washington, DC 20037
Tel: 202-663-6895
Fax: 202-663-6363

**Counsel for First State Insurance Company
Hartford Accident And Indemnity Company
New England Reinsurance Corporation and
Nutmeg Insurance Company**

</div>

# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>KAISER ALUMINUM CORPORATION, <u>et</u>. <u>al</u>.,<br><br>Debtors. | Chapter 11<br><br>Jointly Administered Under<br>Case No. 02-10429 (JKF)<br><br><br>Re:  Docket No. 7312 |

## CERTAIN INSURERS' OBJECTION TO THE ALLEGED STATUTORY PREEMPTION OF INSURERS' RIGHTS AND <u>DEBTORS' OBLIGATIONS UNDER INSURANCE POLICIES</u>

15793

## PRELIMINARY STATEMENT

The Debtors proposed reorganization plan contemplates numerous alterations of certain insurers' (collectively, the "Insurers")[1] contract rights and the Debtors' obligations under certain insurance policies, as well as the elimination of coverage defenses of the Insurers. As set forth below, the Court should hold that the statutory preemption of the Insurers' contract rights and the Debtors' obligations is inapplicable, and that none of Section 1123(a)(5), 524(g), or Section 541(a) preempt or alter the insurers' contract rights under their policies.

## FACTUAL BACKGROUND

The Insurers each issued insurance policies to the Debtors that may provide coverage for certain occurrences based upon exposure to asbestos and other losses (the "Policies"). Among other provisions, each of the Policies contain a "No Assignment" clause prohibiting the assignment of rights under the Policies without the Insurers' consent. The Debtors have neither sought nor obtained the consent of any Insurer to the Debtors' proposed assignment of their rights to the Policies. Under applicable state law (California), the Debtors are therefore prohibited from such assignment.

Pursuant to the Debtor's proposed Second Amended Joint Plan of Reorganization, as amended by the Bankruptcy Insurance Stipulation (defined hereinafter)

---

[1] The Insurers include: AIU Insurance Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., and New Hampshire Insurance Company; Columbia Casualty Insurance Company, Transcontinental Insurance Company, Harbor Insurance Company, and Continental Insurance Company; and Westport Insurance Corporation, f/k/a Puritan Insurance Company, f/k/a The Manhattan Fire & Marine Insurance Company.

(the "Amended Plan"), the Debtors seek to assign their rights under the Policies to the

Funding Vehicle Trust as follows:[2]

- Section 6.7(a) of the Amended Plan purports to assign any and all of the Debtors' rights under the Policies to the Funding Vehicle Trust, without Insurers' consent, while binding Insurers to all of their obligations under the policies (the "Assignment"). (See Amended Plan, § 6.7(a), at pg. 47.)[3]

- As an express condition to confirmation, the requirement that this Court declare that the insurance assignment is "valid and enforceable," without any provision as to whether such declaration is to be made under applicable state (California) or federal (bankruptcy) law. (See Amended Plan, § 10.1(a)(xv), at pg. 58.)

The Insurers believe that the no-assignment provisions and applicable

California state law construing the no-assignment provisions expressly prohibit the

Assignment. See, e.g., Henkel Corp. v. Hartford Accident and Indemnity Co., 29 Cal.4th 934

(2003). In Henkel, the California Supreme Court addressed "No Assignment" language

similar to that contained in many of the Policies and enforced such "No Assignment" clauses

to the detriment of a successor corporation seeking coverage under policies issued to its

predecessor. Henkel, 29 Cal.4th at 938; see also General Accident Ins. Co. v. Superior Court,

---

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Amended Plan.

[3]  As a practical matter, the structure of the proposed insurance assignment will lead to absurd results. Under the Amended Plan, only rights to receive proceeds from the policies in respect of asbestos claims, coal tar pitch volatile claims, noise-induced hearing loss claims and silica claims are transferred to the Funding Vehicle Trust. See Amended Plan, § 5.1(d)(i), at pg. 35. The Reorganized Debtors retain the right to seek coverage under the Policies for all other tort claims, including, for example, claims resulting from exposure to agricultural chemicals or fires due to faulty aluminum wire. See Amended Plan, § 12.2(c)(iii), at pg. 62. Consequently, the Insurers are faced with the prospect of multiple "owners" of the Policies disputing their respective rights to coverage thereunder.

55 Cal.App.4th 1444 (1997) (holding that a corporate successor is not entitled to seek coverage from policies issued to its predecessor simply because the successor is held liable in tort); Quemetco Inc. v. Pacific Auto Ins., 24 Cal.App.4th 494 (1994) (enforcing no-assignment provision following the transfer of a predecessor's insurance rights to its successor).

In light of California case law supporting the enforcement of the Policies' no-assignment provisions, certain of the Insurers filed a motion for summary adjudication on issue of assignment of policies (the "Assignment Motion") in the San Francisco Superior Court of the State of California (the "State Court") seeking a resolution of the lawfulness of the Assignment under the terms of the Policies and applicable California state law. In response to the Assignment Motion, the Debtors filed in this Court their motion for entry of an order enforcing the automatic stay and directing certain insurance companies to dismiss their recent motion seeking adjudication of plan confirmation issues in California state court (the "Stay Motion," [Docket No. 7460]). In the Stay Motion, the Debtors admit that they intend to seek to a finding that the Bankruptcy Code preempts the no-assignment provisions contained in the Policies and applicable state law as part of the confirmation proceeding for the Amended Plan. (See Stay Motion, ¶¶ 26-28.)

In addition, the Insurers objected to various terms of the Amended Plan, including, inter alia, the Assignment and any order confirming the Plan as to the Insurers' rights and the Debtors' obligations under the Policies. Thereafter, the Debtors and the Insurers stipulated and agreed, inter alia, to make certain modifications to the Amended Plan and narrow the scope of the Insurers' objections to the Plan (the "Bankruptcy Insurance

Stipulation" [Docket no. 7718]). Specifically, by the Bankruptcy Insurance Stipulation, the Insurers agreed that they would limit their objections to the Amended Plan to the following subjects:

- Whether, under the Bankruptcy Code as a matter of law, the Assignment is valid and enforceable against the Insurers notwithstanding the anti-assignment provisions of the Policies and applicable state law; and

- Whether the Plan complies with Bankruptcy Code Sections 524(g)(2)(B)(i)(II) and (III).

(See id., §§ 3(a) & (b)). With respect to the first of these issues, which is the subject of this Objection,[4] the parties further stipulated as follows:

- The anti-assignment / consent-to-assignment provisions are among the material provisions of the Insurers' Policies.

- There is a material dispute between Kaiser and the Insurers as to whether the Assignment is valid under the anti-assignment provisions of the Policies and applicable State law.

- The Insurers have not given their consent to the Assignment.

- Kaiser and the Insurers shall introduce, as evidence, only the Plan, the Disclosure Statement, the Plan Documents, and the Insurers' Policies unless the Court otherwise calls for additional evidence in accordance with Section 5 above.

(See id. at § 8).

---

[4] The certain of Debtors' insurers have filed a separate brief addressing the Section 524(g) issues.

Based on the foregoing, the Insurers understand that the Debtors will seek a finding that the Assignment is valid and enforceable against the Insurers under the Bankruptcy Code as a matter of law notwithstanding the Policies' anti-assignment provisions and applicable state law. Accordingly, the Insurers hereby object to the Amended Plan on the grounds that, as a matter of law, the Debtors' Assignment of the Policies is invalid and unenforceable under the Bankruptcy Code.

## ARGUMENT

### POINT I

### PREEMPTION DOCTRINE MUST BE CONSTRUED NARROWLY

The Debtors generally argue that the Bankruptcy Code, through Sections 524(g), 541(a), and 1123(a)(5), preempts the no-assignment provisions of the Policies and applicable California state law construing such provisions. (See Stay Motion, ¶¶ 26-28.). Contrary to the Debtors' assertions, the Bankruptcy Code does not preempt the private rights of the Insurers under their Policies.

The Supremacy Clause of the Constitution, U.S. Const. art. VI, cl. 2, overrides state laws that "interfere with, or are contrary to" federal law. Hillsborough County, Fla. v. Automated Med. Labs., Inc., 471 U.S. 707, 712 (1985). State law generally may be preempted by federal law in two ways, either: (1) by express language in a congressional enactment, (2) by implication from either (a) the depth and breadth of a congressional scheme that occupies the legislative field, or (b) because of a conflict with a congressional enactment. Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 541 (2001) (citations omitted). See also

Integrated Solutions, Inc. v. Serv. Support Servs., Inc., 124 F.3d 487, 491 (3d Cir. 1997) (quoting In re Roach, 824 F.2d 1370, 1373 (3d Cir. 1987)) ("Pre-emption must be either explicit, or compelled due to an unavoidable conflict between the state law and the federal law."). "[T]he purpose of Congress is the ultimate touchstone of preemption analysis." Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992).

Federal preemption of state law is disfavored. The party seeking preemption carries a "considerable burden of overcoming the 'starting presumption that Congress does not intend to supplant state law.'" DeBuono v. NYSA-ILA Med. & Clinical Servs. Fund, 520 U.S. 806, 814 (1997). The same is true when courts analyze whether the federal Bankruptcy Code preempts state law. BFP v. Resolution Trust Corp., 511 U.S. 531, 544-545 (1994) (unless "the federal statutory purpose must be clear and manifest . . . the Bankruptcy Code will be construed to adopt, rather than to displace, pre-existing state law") (internal quotations and citations omitted); PG&E, 350 F.3d at 943 ("presumption against displacing state law . . . is just as strong in bankruptcy as in other areas of federal legislative power"); In re Roach, 824 F.2d at 1373 (the analysis begins with "the basic assumption that Congress did not intend to displace state law"); see also Green v. Fund Asset Mgmt., L.P., 245 F.3d 214, 222, 230 (3d Cir. 2001) (plan proponents bear burden of demonstrating preemption).

The strong presumption against federal preemption is enhanced in areas, such as insurance law, that have traditionally been subject to state regulation. Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996) (state laws in area traditionally subject to state regulation not superseded by federal law unless Congress' intent to do so is "clear and manifest"); Witco Corp. v. Beekhuis, 38 F.3d 682, 687 (3d Cir. 1994) (holding that, "for preemption to occur in

6

a field traditionally occupied by the states, there must be a 'sharp' conflict between state law and federal policy" and "congressional intent to supersede state laws must be 'clear and manifest'"). Insurance is an area that is traditionally governed by state law. See Barnhardt Marine Ins., Inc. v. New England Int'l Sur. of Am., Inc., 961 F.2d 529, 531 (5th Cir. 1992) (affirming district courts' decision to abstain in insurance broker's action against insurance company, which was subject of state liquidation proceeding).

The presumption against preemption is further heightened in the insurance context by the McCarran-Ferguson Act, which expresses Congress' specific desire that its enactments not be deemed implicitly to preempt state regulation of insurance. See 15 U.S.C. § 1012(b);[5] see also United States v. Fabe, 508 U.S. 491 (1993) (McCarran-Ferguson Act trumped the Bankruptcy Code and, thus, automatic stay did not apply to bankruptcy proceedings involving regulation of insurance company).

Furthermore, judicial skepticism regarding federal preemption is at its height when a debtor argues that the Bankruptcy Code supersedes a state law restriction on the debtor's pre-petition property rights. Integrated Solutions, Inc., 124 F.3d at 493-95. "[W]ithout explicit federal preemption, the trustee does not have greater rights in the property of the estate than the debtor had before filing for bankruptcy." Id. at 493 (emphasis added). It is axiomatic that "property interests are created and defined by state law." Butner v. United

---

[5]    The Act provides:

> (a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

> (b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance...

15 U.S.C. § 1012.

States, 440 U.S. at 55 (1979).  Uniform treatment of the property rights of the debtor and its successors is necessary "to prevent a party from receiving a windfall merely by reason of the happenstance of bankruptcy."  Id.

Thus, the Debtors assume a heavy burden to persuade this Court that the doctrine of preemption can be applied to eliminate the Insurers' contractual rights and the Debtors' contractual obligations under the Policies.  The Debtors have not met this burden in seeking to validate the Assignment and the Bankruptcy Code does not preempt the no-assignment provisions of the Policies and applicable state law.

<div align="center">POINT II</div>

<div align="center">**BANKRUPTCY CODE SECTION 1123(A)(5)<br>DOES NOT PREEMPT INSURERS' CONTRACT RIGHTS**</div>

The Debtors will undoubtedly claim that the language of Section 1123(a)(5), particularly the "notwithstanding" clause thereof, acts to expressly preempt the Insurers' contract rights existing under state law.  Where a federal statute contains an express preemption clause, the court "must in the first instance focus on the plain wording of the clause." Sprietsma v. Mercury Marine, 537 U.S. 51, 62 (2002).  In determining the scope of an express preemption provision, the court "move[s] on, as need be, to the structure and purpose of the Act in which [that provision] occurs."  New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995).  Where such an express preemption provision operates "in a field which the States have traditionally occupied," it receives a "narrow interpretation."  Medtronic, 518 U.S. at 485 (internal

<div align="center">8</div>

quotation marks and citations omitted). For the reasons set forth below, Section 1123(a)(5) does not expressly preempt such rights.

A.     **The Plain Language of Section 1123(a)(5) Does Not Purport To Preempt Private Contracts Like the Insurance Policies**

In arguing that Section 1123(a)(5) preempts Insurers' rights under the policies, the Debtors ignore the plain language of the "notwithstanding" clause. Section 1123(a)(5) provides, in relevant part, that "[n]otwithstanding any otherwise applicable nonbankruptcy law, a plan shall . . . provide adequate means for the plan's implementation . . .". U.S.C. § 1123(a)(5). The "notwithstanding" clause of Section 1123(a), by its terms, makes no reference to "contracts" but only to "applicable *nonbankruptcy law.*" *See id.* (emphasis added). Thus, extending any express preemptive power of Section 1123(a)(5) to private contracts would disregard what the statute actually says and clearly be at odds with preemption doctrine and the treatment of private agreements in the language of the Bankruptcy Code.

B.     **Congress Did Not Intend To Preempt the Terms of Private Contracts In the "Notwithstanding" Clause of Section 1123(a)(5)**

Congress displayed no clear and manifest intention to preempt any non-debtor's contract rights in Sections 1123(a)(5). There is no evidence that Congress intended for Section 1123(a)(5) to alter the well-established, fundamental principle that preemption does not apply to private agreements. See Cipollone, 505 U.S. at 517 ("Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted.").

It is well-settled that Congress' choice to use different terms in different parts of a statute is presumed purposeful. <u>Bank of Am. Nat'l Trust and Sav. Assoc. v. 203 North LaSalle St. P'ship</u>, 526 U.S. 434, 450 (1999) ("it is unlikely that the drafters of legislation so long and minutely contemplated as the 1978 Bankruptcy Code would have used two distinctly different forms of words for the same purpose").[6] Consequently, the lack of evidence of any intent to preempt private agreements is significant because Congress knew clearly how to override the terms of state law *and* private contracts in the Bankruptcy Code when it wanted to do so – and in each instance it made that intent clear. <u>See</u>, <u>e.g.</u>, 11 U.S.C. § 363(l) (governing use, sale, or lease or property) ("notwithstanding any provision in a contract, a lease, or applicable law"); 11 U.S.C. § 365(e)(1) (governing executory contracts and unexpired leases) ("[n]otwithstanding a provision in an executory contract or unexpired lease, or in applicable law"); 11 U.S.C. § 365(f)(1) ("[n]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law"); 11 U.S.C. § 1124(2) (impairment of claims or interests) ("notwithstanding any contractual provision or applicable law").

Tellingly, a Bankruptcy Code provision relevant to what constitutes property of the Debtor's estate – Section 541(c) – contains the broader preemptory language intended to override contrary contractual provisions: "notwithstanding any provision in an *agreement*, transfer instrument, or applicable nonbankruptcy law . . . ." 11 U.S.C § 541(c)(1). Section

---

[6]    <u>See also</u> <u>Keene Corp. v. United States</u>, 508 U.S. 200, 208 (1993) ("where Congress includes particular language in one section of a statute but omits it in another . . . it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (citations omitted); <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 934 (3d Cir. 1997) (same).

1123(a)(5), however, contains no such specific language.[7] In short, when Congress wished to preempt the terms of private agreements in the Bankruptcy Code, it has said so *expressly*. The fact that it did not do so here – and instead expressly limited § 1123(a)(5)'s preemptive scope to "law" – should be dispositive of the preemption inquiry.

## C.    General Preemption Language Does Not Apply To the Terms of Private Contractual Agreements

As discussed above, the Supremacy Clause, by its terms, applies only to state enactments made pursuant to state powers, such as laws and regulations. See Gibbons v. Ogden, 9 Wheat. 1, 211, 22 U.S. 1 (1824) ("appropriate application of" Supremacy Clause is to "acts of the state legislatures . . . enacted in the exercise of [their] powers"); Building & Constr. Trades Council of Metro Dist. v. Associated Contractors & Builders of Mass./R.I., Inc., 507 U.S. 218, 227 (1993) ("preemption doctrines apply only to state regulation"). Accordingly, the Supreme Court has held that, absent a clear indication of Congressional intent, preemption does not apply to private contracts, which do not constitute state lawmaking.

For example, in Building & Construction Trades Council, the Supreme Court overturned an injunction of a provision of a labor agreement to which a state was a party,

---

[7]  The recent Third Circuit Court of Appeals decision vacating the order of confirmation in In re Combustion Engineering does not interpret Section 1123(a)(5). Rather, it merely affirms the settled principle (referenced in the text above) that an interest of the debtor in property is transferred to the debtor's estate, regardless of any contractual anti-assignment provision, pursuant to Section 541(c)(1) of the Bankruptcy Code. See In re Combustion Eng'g, 391 F.3d 190, 218-19 & n.27 (3d Cir. 2004). Combustion Engineering does not reach Section 1123(a)(5) preemption issues relevant to the proposed assignment of insurance rights to a Section 524(g) trust. While the Third Circuit makes a passing reference, without analysis, to Section 1123(a)(5), it neither interprets that statute nor addresses the different issue presented here: whether Section 1123(a)(5) permits the transfer of the debtor's "insurance rights", despite a contractual anti-assignment provision, out of the estate.

holding that the agreement was not a government regulation subject to preemption under the

National Labor Relations Act ("NLRA").  507 U.S. at 232-33.  Even though the state was a

party to the agreement, it was acting as a private actor in the marketplace.  Because

"preemption doctrines apply only to *state regulation*," id. at 227, and because "the Supremacy

Clause does not require preemption of private conduct," id. at 229, the NLRA did not preempt

the state's agreement.  Id. at 232-33.

        As the case law makes clear, the mere fact that an agreement's terms arise

under state law, or would be enforced pursuant to state law, does not change the analysis.  In

Cipollone, the Supreme Court held that the plaintiff's state law claim for breach of express

warranty was not preempted by the Public Health Smoking Act, which preempted any

"requirement" "imposed under State law."  505 U.S. at 506, 526.  Because any "requirement"

imposed by the warranty was not imposed by the state, but voluntarily by the promisor, it was

not subject to preemption.  Id. at 525-26.  The Court rejected the argument that, because the

general duty against breach arises under state law, the express warranty here was a

"requirement imposed by state law":

> That a contract has no legal force apart from the [state] law
> that acknowledges its binding character . . . does not mean that
> every contractual provision is imposed under State law.  To the
> contrary, common understanding dictates that a contractual
> requirement, although only enforceable under state law, is not
> imposed by the State, but rather is imposed by the contracting
> party upon itself.

Id. at 526 n.24.  Even when the state was a party, as it was in Building & Construction

Trades Council, and its conduct could have the effect of "regulating" behavior, the Court

still held that preemption did not apply:  "The fact that a private actor may 'regulate' does

not mean, of course, that the private actor may be 'pre-empted' by the NLRA." 507 U.S.
at 229. Thus, private contracts, even those that derive from state law and that are enforced
under state law, are not themselves state "laws" subject to federal preemption in the
absence of a clear expression of a Congressional intent to override the terms of such a
private contract.[8]

      The legislative history of § 1123(a) makes clear that the "notwithstanding"
clause has limited reach. The original version of § 1123(a), as enacted in 1978, contained no
preemption language of any kind. Congress added the "notwithstanding" clause to § 1123(a)
in 1984 as a "technical stylistic change." S. Rep. No. 97-150, at 15 (1981); S. Rep. No. 98-
65, at 84 (1983). The legislative history of the amendment ascribes no special substantive
purpose to it, merely stating that "[t]his amendment makes it clear that the rules governing
what is to be contained in the reorganization plan are those specified in this section; deletes a
redundant word; and makes several stylistic changes." Staff of House Comm. on the
Judiciary, An Act to Correct Technical Errors, Clarify and Make Minor Substantive Changes
to Public Law 95-598, H.R. No. 96-1195, at 22 (1980). Consequently, there is no clear

---

[8] See also Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 228-229 (1995) (Airline Deregulation Act, which
preempts state regulation of air carrier services, did not preempt state law breach of contract claims filed by
passengers against airline regarding frequent flier programs; contracts were "privately ordered obligations"
and did not amount to a law, rule, regulation, standard, or other provision having the force and effect of law
under ADA preemption statute); Duvall v. Bristol-Myers Squibb Co., 65 F.3d 392, 401 (4th Cir. 1995)
(express warranty claims not preempted by Medical Device Amendment to Federal Food, Drug, and
Cosmetic Act, which preempts state imposed requirements on medical devices; to extent warranty claims
were based solely on voluntary promises made by warrantor, not duties imposed under state law, claims were
not requirements imposed under state law), vacated on other grounds, 518 U.S. 1030 (1996); American Auto.
Mfrs. Ass'n v. Comm., Mass. Dep't Envtl. Prot., 998 F. Supp. 10, 24 (D. Mass. 1997) (Section 209(a) of the
Clean Air Act, which preempted all state "standards" regarding vehicle emissions, did not apply to
Memoranda of Understanding between state agency and private automakers, as these were private, voluntary
agreements, and were not "standards" within the section's preemptive scope; "[C]ourts generally restrict
federal preemption to state laws, statutes, rules, regulations, and other state provisions having the force and
effect of law...[and have] made a clear distinction between state-imposed requirements and voluntary
contractual agreements") (citations omitted), aff'd, 208 F.3d 1, 7 (1st Cir. 2000) ("[F]ederal preemption is
generally confined to formal state laws and regulations and not applicable to contracts and other voluntary
agreements.").

expression of any Congressional intent to override the terms of private contracts in Section 1123(a)(5), and therefore no express preemption of such terms.

**D.      Section 1123(a)(5) Preempts Only Laws "Relating to the Financial Condition" of a Debtor.**

Even if the phrase "nonbankruptcy law" were somehow read to encompass private contracts as well as state law, the Debtors' interpretation of the statute's scope would still fail.  The Ninth Circuit's decision in PG&E – the most recent and most thoroughly reasoned Court of Appeals decision interpreting the statute – refutes any argument that Section 1123(a)(5) preempts the terms of insurance contracts.  In a detailed opinion, a unanimous panel held that Section 1123(a)(5) did not preempt state laws requiring, inter alia, the consent of a state regulatory agency to the break-up of the debtor, a public utility, into four new corporations.  It held that the preemptive scope of Section 1123(a) is co-extensive with the preemptive scope of Section 1142(a) of the Bankruptcy Code, and that the two sections preempt only state laws "relating to financial condition."  Id. at 937.

In so holding, the Ninth Circuit thoroughly considered the overall structure and purpose of the Bankruptcy Code, along with the legislative history of the specific provisions at issue.  The court noted that both Section 1123(a) and Section 1142(a) were enacted as part of the Bankruptcy Code in 1978, see id. at 934, 947, and that the two sections are closely related, as both "are directly concerned with the contents and implementation of a reorganization plan." Id.

As enacted in 1978, Section 1142(a) contained language expressly preempting certain non-bankruptcy laws that conflicted with the implementation of a confirmed plan.  It

provided: "Notwithstanding any otherwise applicable nonbankruptcy law, rule or regulation *relating to financial condition,* the debtor . . . shall carry out the plan and shall comply with any orders of the court." 11 U.S.C. § 1142(a) (emphasis added); see PG&E, 350 F.3d at 941. Section 1123, however, as originally enacted, contained no such preemptive language. As noted supra, Congress did not add that language until 1984, when it modified Section 1123(a) to begin, "Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall . . . ." 11 U.S.C. § 1123(a); see PG&E, 350 F.3d at 938. Accordingly, prior to 1984, confirmation and implementation of a plan under the Bankruptcy Code could preempt only laws "relating to financial condition" that would otherwise prevent a debtor from carrying out the plan and complying with court orders.

As the PG&E court observed, there is "absolutely no indication" that the 1984 amendments "were intended by Congress to make any important changes to the 1978 Code." Id. at 947. Indeed, the 1984 Act itself characterized the amendment to Section 1123(a) as a "technical amendment[]." Id. at 939-40, 947 (discussing the legislative history of the amendment to § 1123(a)). Nothing in the legislative history suggests that Congress intended to break radically from past practice – which limited preemption to laws "relating to financial condition" – by permitting debtors broadly to preempt state law or private agreements merely by including contrary terms in a plan of reorganization. Indeed, nothing in the legislative history suggests that Congress intended any change in past practice at all. See id. at 947 (noting that the legislative history stated that the amendments were "consistent with [the] policies" of the 1978 Act). Accordingly, the court of appeals concluded, the best interpretation of the addition of the "notwithstanding" clause to Section 1123(a) was that Congress merely intended to parallel the preexisting preemption clause of Section 1142(a).

15

The Ninth Circuit's holding harmonizes the relationship between these two closely affiliated provisions. It appropriately respects the Constitution-based presumption against preemption – which is particularly strong in the context of insurance, where state regulatory authority is paramount. The holding is also the only interpretation of Section § 1123(a) that is consistent with the basic principle – repeatedly reaffirmed by the Supreme Court – that the Bankruptcy Code should not be read to break with prior practice absent a clearly stated intent to do so. See, e.g., Midlantic Nat'l Bank v. New Jersey Dep't Envt'l Prot., 474 U.S. 494, 495 (1986) (holding that § 554(a) of the Bankruptcy Code, which permits trustee to abandon property and contains no express restrictions on abandonment power, did not permit trustee to abandon property in contravention of state environmental regulations, because Bankruptcy Code should be read to be consistent with pre-Code practice). Thus, the Ninth Circuit correctly applied that principle of statutory interpretation to Section 1123(a).

Moreover, the Ninth Circuit based its holding not only on the legislative history, but also "on the overall structure of the Code." PG&E, 350 F.3d at 947. As the court observed:

> It makes perfect sense that the express preemptive scope of what must be included in a confirmable plan, specified in § 1123(a), would be the same as the express preemptive scope of what is actually included in a confirmed plan, specified in § 1142(a). It also makes perfect sense that the express preemptive scope of what must be in a confirmable and confirmed plan would be laws 'relating to financial condition.'

Id. at 947-48.

The phrase "financial condition" is used throughout the Bankruptcy Code to refer to the relative solvency or insolvency of a debtor. See, e.g., 11 U.S.C. § 101(32)(A) ("'Insolvent' means … with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property …"); id. at § 363(l) (permitting trustee to use, sell, or lease property of the estate "notwithstanding any provision in a contract, a lease, or applicable law that is conditioned on the insolvency or financial condition of the debtor").[9]  As the Ninth Circuit concluded, it is consistent with past bankruptcy practice that the express preemptive scope of both Section 1142 and Section 1123(a)(5) applies to laws directly relating to the solvency or insolvency of the debtor, and thus to the matters with which the Bankruptcy Code itself deals and with respect to which Congress intended its provisions to be exclusive. PG&E, 350 F.3d at 947-48.

Section 1142(a) therefore preempts only state laws that purport to restrict the implementation of a plan by imposing conditions relating to the relative solvency or insolvency of the debtor. See, e.g., Barber v. Bettendorf Bank (In re Pearson Indus., Inc.), 152 B.R. 546, 557 (Bankr. C.D. Ill. 1993) (preempting Illinois law conditioning shareholder distributions on solvency of company); In re Doty, 129 B.R. 571, 577 (Bankr. N.D. Ind. 1991) ("Thus if the debtor cannot comply with net capital or reserve rules which would otherwise serve as cause for regulatory authorities to shut down the business and if the debtor operates

---

[9]  See also 11 U.S.C. § 101(32)(B) (insolvency defined by financial condition of partnership); § 101(32)(C) (insolvency defined by financial condition of municipality); § 365(b)(2) ("Paragraph (1) of this subsection does not apply to a default that is a breach of a provision relating to … the insolvency or financial condition of the debtor …"); § 365(e)(1) (prohibiting termination of executory contract based on contractual provision providing for termination conditioned on "the insolvency or financial condition of the debtor"); § 525; § 541(C)(1)(B) (making all property of debtor property of bankruptcy estate notwithstanding contractual provisions conditioning debtor's property interest on "the insolvency or financial condition of the debtor").

the reorganized entity in accordance with the plan, regulatory authorities arguably are bound by the plan to permit such operation."). By the same token, Section 1142(a) does <u>not</u> preempt laws <u>unrelated</u> to financial condition. <u>See, e.g., Am. Freight Sys., Inc. v. ICC (In re Am. Freight Sys., Inc.)</u>, 179 B.R. 952, 960 (Bankr. D. Kan. 1995) (§ 1142(a) does not preempt federal Negotiated Rates Act; "the NRA is not conditioned upon the financial condition or insolvency of the carrier . . . [I]ts application is dependent [instead] on the operating status of the carrier"); <u>In re Mahoney</u>, 80 B.R. 197, 201 (Bankr. S.D. Cal. 1987) (refusing to apply § 1142(a) to preempt California law regarding terms of office for corporate directors).

Correspondingly, the scope of preemption under Section 1123(a)(5) is the same. State laws governing third-party liability insurance contracts are simply not laws that depend on or purport to regulate the financial condition of debtors. Of course, private insurance agreements similarly cannot be deemed to depend on or regulate the financial condition of debtors. Therefore, neither state laws governing insurance contracts, nor the contracts themselves, are preempted by Section 1123(a)(5).

## POINT III

## BANKRUPTCY CODE SECTION 524(G) DOES NOT PREEMPT INSURERS' CONTRACT RIGHTS

The basis for any argument that Section 524(g) somehow preempts and alters the Insurers' contractual rights under their Policies is not clear or well-founded. Indeed, as outlined below, Section 524(g) does not act to preempt the Insurers rights under their Policies either by express language or by implication.

**A.       Section 524(g) Does Not Expressly Preempt The Insurers' Contract Rights.**

Section 524(g) contains *no* requirement that insurance contracts, rights, or proceeds must be contributed to an asbestos trust, nor does it sanction the erasure of contractual rights.  What the statute does require in terms of funding a trust is this:

> [T]he injunction is to be implemented in connection with a trust that, pursuant to the plan of reorganization . . . (II) is to be funded in whole or in part by the securities of 1 or more debtors involved in such plan and by the obligation of such debtor or debtors to make future payments, including dividends.

11 U.S.C. § 524(g)(2)(B)(i).  The statute's <u>requirements</u> as to funding a trust are focused on a specific type of contribution by the debtor or debtors – not by third parties.  The statute creates no requirement of insurer funding.

There is clearly no express preemption, because Section 524(g) makes no reference to insurance contracts, a debtor's rights thereunder or the assignment of those rights to a trust governed by that provision.  As note above, in the limited instances where Congress intended to preempt the terms of private agreements under the Bankruptcy Code, it has said so expressly.

**B.       Section 524(g) Does Not Impliedly Preempt The Insurers' Contract Rights.**

The Debtors may argue a theory of implied preemption.  As described above, state law generally may be impliedly preempted under the doctrines of either "conflict" or "field" preemption.  Field preemption is inapplicable here, as Congress has not established a pervasive scheme of insurance regulation, nor is the federal interest in insurance so dominant

19

that enforcement of state laws is precluded.  To the contrary, Congress has expressly left the field of insurance regulation almost entirely to the states. *See* 15 U.S.C. § 1012.

There is, likewise, no implied conflict preemption because there is no conflict between the requirements of Bankruptcy Code Section 524 and the Debtors' obligations, whatever they may be, under the Policies.  Conflict preemption applies only "where it is *impossible* for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Sprietsma v. Mercury Marine, 537 U.S. 51, 64-65 (2002), quoting Freightliner Corp. v. Myrick, 514 U.S. 280, 287 (1995) (emphasis added).  The proponent of preemption retains the "considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." DeBuono v. NYSA-ILA Med. & Clinical Servs. Fund, 520 U.S. 806, 814 (1997).  As always, the focus remains on Congress's intent.

No conflict exists which would make it impossible for a chapter 11 plan to satisfy the requirements of Section 524(g) while at the same time granting asbestos claimants, or a trust for their benefit, no greater rights against insurers than a debtor had prior to bankruptcy.  Section 524(g) provides for the creation of a trust that will value and pay present "claims" and future "demands." See 11 U.S.C. § 524(g)(B)(ii)(IV).  Section 524(g) further provides that the trust must be funded by, among other means, "the securities of 1 or more of the debtors . . . including dividends." 11 U.S.C. § 524(g)(B)(i)(II).  Section 524(g) does not state that a debtor is relieved of its obligations under a prepetition insurance contract, nor provide that a trust created under Section 524(g) may operate in a manner that is inconsistent with the terms of such a contract.

20

Nothing in the legislative history of Section 524(g) suggests otherwise. Congress modeled Section 524(g) on the plan framework created in <u>Kane v. Johns-Manville Corp.</u>, 843 F.2d 636 (2d Cir. 1988) ("<u>Johns-Manville</u>"). <u>See</u> 140 Cong. Rec. H10,765 (remarks of Rep. Jack Brooks); 3 Norton Bankruptcy Law & Practice § 48:6 (2004) to codify the <u>Johns-Manville</u> trust to which parties in interest contributed funding in exchange for the protection of a channeling injunction. Some of those parties in interest were insurers, and certainly Section 524(g) accommodates the potential for contributions by insurers in return for the protection of the channeling injunction. <u>See</u> 11 U.S.C. § 524(g)(4)(A)(ii)(III). In <u>Johns-Manville</u>, however, the debtors' insurers <u>agreed</u> to contribute proceeds to the trust; they were not compelled to do so. <u>Johns-Manville</u>, 843 F.2d 636, 640 (2d Cir. 1988; <u>see</u> <u>Amatex Cas. & Sur. Co. v. Aetna Cas. & Sur. Co</u>, 97 B.R. 220, 224 (Bankr. E.D. Pa. 1989 (distinguishing treatment of insurers in <u>Johns-Manville</u> on ground that insurers had voluntarily agreed to contribute lump sum payments to trust). There is nothing in the history of Section 524(g) that demonstrates a "clear and manifest" Congressional intention to strip insurers of any pre-petition contract rights in order to fund asbestos trusts.

The problem in these proceedings is not that Section 524(g) conflicts with the Insurers' contract rights. It is <u>this</u> Amended Plan and <u>these</u> Trust Distribution Procedures, as drafted, conflict with those rights. In sum, there is no "unavoidable" conflict between Section 524(g) and Insurers' contract rights. Preemption is unavailable because several alternatives were available to the Debtors, including a consensually funded plan negotiated with and consented to by the Insurers.

The purposes of Section 524(g) are to permit debtors with substantial future asbestos liability to successfully reorganize, by channeling future as well as present asbestos liability to a trust, and to provide fair and equitable treatment for present and future asbestos claimants. Not one word in Section 524(g) suggests that Congress intended the statute to alter the extra-bankruptcy relationship between insurer and insured.

<div align="center">

**POINT IV**

**BANKRUPTCY CODE SECTION 541 DOES
NOT PREEMPT INSURERS' CONTRACT RIGHTS**

</div>

Finally, Bankruptcy Code Section 541 does not alter or preempt the Insurers' rights under the Policies. It is fundamental that "[Section] 541(a) can not be utilized to enhance the nature or extent of the debtor's interest in property as the trustee succeeds to no greater interest than that held by the debtor at the time the bankruptcy petition is filed." Musso v. New York State Higher Educ. Servs. Corp., 157 B.R. 932, 941-42 (Bankr. E.D.N.Y. 1993); see also, In re N.S. Garrott & Sons, 772 F.2d 462, 465-66 (8th Cir. 1985) ("The legislative history makes note of the broad scope of the definition [of property of the estate], but also makes clear that the definition was not designed to enlarge the debtor's rights against others beyond those existing at the commencement of the case."); Collier on Bankruptcy, ¶ 541.04 ("Although [Section 541(a)(1)] includes choses in action and claims by the debtor against others, it is not intended to expand the debtor's rights against others beyond what rights existed at the commencement of the case.").

Bankruptcy Code Section 541 does not preempt the private rights of a non-debtor party. To the contrary, Section 541 and the cases construing that provision make clear that the debtor's rights in property remain subject to the private rights of non-debtor parties.

## CONCLUSION

For the foregoing reasons, the Court should (i) determine that statutory preemption does not apply to Insurers' rights and Debtors' obligations under the relevant insurance Policies; (ii) determine that the Amended Plan's treatment of those rights and obligations does not comply with Sections 524(g), 541(a) and 1129(a)(5) of the Bankruptcy Code; and (iii) deny confirmation of the Amended Plan.

Dated:  December 2, 2005

Respectfully submitted,


By:/s/ *Frederick B. Rosner*
   Frederick B. Rosner, Esq. (ID No. 3995)

JASPAN SCHLESINGER HOFFMAN LLP
913 Market Street, 12th Floor
Wilmington, DE  19801
Telephone:  302-351-8000/8005
Facsimile:  302-351-8010

Michael S. Davis, Esq.
Jantra Van Roy, Esq.
ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York  10022
Telephone:  212-826-5300
Facsimile:  212-753-0396

**Attorneys for AIU Insurance Company,
Granite State Insurance Company,
Insurance Company of the State of**

23

Pennsylvania, Landmark Insurance
Company, Lexington Insurance Company,
National Union Fire Insurance Company of
Pittsburgh, Pa., and New Hampshire
Insurance Company

Lewis S. Rosenbloom
David C. Christian II
Jason J. DeJonker
McDERMOTT, WILL & EMERY
227 West Monroe Street
Chicago, Illinois 60606-5096
Telephone:  312-372-2000
Facsimile:  312-984-7700

**Counsel for Columbia Casualty Insurance
Company, Transcontinental Insurance
Company, Harbor Insurance Company, and
Continental Insurance Company**

Andrew R. McCloskey
Riedl, McCloskey & Waring LLP
550 West "C" Street, Suite 500
San Diego, CA 92101
Telephone:  (619) 237-3095
Facsimile:  (619) 237-3789

**Attorneys for Westport Insurance
Corporation, f/k/a Puritan Insurance
Company, f/k/a The Manhattan Fire &
Marine Insurance Company**

474306.04/2888-014/MI

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................... 1

FACTUAL BACKGROUND .................................................................................... 1

ARGUMENT ............................................................................................................. 5

POINT I    PREEMPTION DOCTRINE MUST BE CONSTRUED
           NARROWLY ............................................................................ 5

POINT II   BANKRUPTCY CODE SECTION 1123(A)(5)  DOES NOT
           PREEMPT INSURERS' CONTRACT RIGHTS........................................... 8

    A.     The Plain Language of Section 1123(a)(5) Does Not Purport To
           Preempt Private Contracts Like the Insurance Policies ................................... 9

    B.     Congress Did Not Intend To Preempt the Terms of Private
           Contracts In the "Notwithstanding" Clause of Section 1123(a)(5)................ 9

    C.     General Preemption Language Does Not Apply To the Terms of
           Private Contractual Agreements .................................................................. 11

    D.     Section 1123(a)(5) Preempts Only Laws "Relating to the
           Financial Condition" of a Debtor.................................................................. 14

POINT III  BANKRUPTCY CODE SECTION 524(G) DOES  NOT
           PREEMPT INSURERS' CONTRACT RIGHTS........................................... 18

    A.     Section 524(g) Does Not Expressly Preempt The Insurers'
           Contract Rights. ........................................................................................... 19

    B.     Section 524(g) Does Not Impliedly Preempt The Insurers'
           Contract Rights. ........................................................................................... 19

POINT IV   BANKRUPTCY CODE SECTION 541 DOES  NOT
           PREEMPT INSURERS' CONTRACT RIGHTS........................................... 22

CONCLUSION.............................................................................................................. 23

# TABLE OF AUTHORITIES

## Federal Cases

208 F.3d 1, 7 (1st Cir. 2000) ........................................................................................... 13

518 U.S. 1030 (1996) ........................................................................................................ 13

Am. Airlines, Inc. v. Wolens,
    513 U.S. 219 (1995) ................................................................................................. 13

Am. Freight Sys., Inc. v. ICC (In re Am. Freight Sys., Inc.),
    179 B.R. 952 (Bankr. D. Kan. 1995) ...................................................................... 18

Amatex Cas. & Sur. Co. v. Aetna Cas. & Sur. Co.,
    97 B.R. 220 ............................................................................................................... 21

American Auto. Mfrs. Ass'n v. Comm., Mass. Dep't Envtl. Prot.,
    998 F. Supp. 10 (D. Mass. 1997) ............................................................................ 13

Bank of Am. Nat'l Trust and Sav. Assoc. v. 203 North LaSalle St. P'ship,
    526 U.S. 434 (1999) ................................................................................................. 10

Barber v. Bettendorf Bank (In re Pearson Indus., Inc.),
    152 B.R. 546 (Bankr. C.D. Ill. 1993) ..................................................................... 17

Barnhardt Marine Ins., Inc. v. New England Int'l Sur. of Am., Inc.,
    961 F.2d 529 (5th Cir. 1992) .................................................................................... 7

BFP v. Resolution Trust Corp.,
    511 U.S. 531 (1994) ................................................................................................... 6

Building & Constr. Trades Council of Metro Dist. v. Associated Contractors
    & Builders of Mass./R.I., Inc., 507 U.S. 218 (1993) ...................................... 11, 12, 13, 14

Butner v. United States,
    440 U.S. at 55 (1979) ................................................................................................. 8

Cipollone v. Liggett Group, Inc.,
    505 U.S. 504 (1992) ......................................................................................... 6, 9, 12

DeBuono v. NYSA-ILA Med. & Clinical Servs. Fund,
    520 U.S. 806 (1997) .............................................................................................. 6, 20

Duvall v. Bristol-Myers Squibb Co.,
    65 F.3d 392 (4th Cir. 1995) ..................................................................................... 13

Gibbons v. Ogden,
    9 Wheat. 1, 211, 22 U.S. 1 (1824) .......................................................................... 11

Green v. Fund Asset Mgmt., L.P.,
    245 F.3d 214 (3d Cir. 2001) ..................................................................................... 6

ii

Hillsborough County, Fla. v. Automated Med. Labs., Inc.,
      471 U.S. 707 (1985)........................................................................... 5

In re Combustion Eng'g,
      391 F.3d 190, 218-19 & n.27 (3d Cir. 2004)................................... 11

In re Doty,
      129 B.R. 571 (Bankr. N.D. Ind. 1991)........................................... 17

In re Mahoney,
      80 B.R. 197 (Bankr. S.D. Cal. 1987) ............................................. 18

In re N.S. Garrott & Sons,
      772 F.2d 462 (8th Cir. 1985).......................................................... 22

In re Roach,
      824 F.2d at 1373............................................................................. 6

Integrated Solutions, Inc. v. Serv. Support Servs., Inc.,
      124 F.3d 487 (3d Cir. 1997)......................................................... 6, 7

Kane v. Johns-Manville Corp.,
      843 F.2d 636 (2d Cir. 1988).......................................................... 21

Keene Corp. v. United States,
      508 U.S. 200 (1993)....................................................................... 10

Lorillard Tobacco Co. v. Reilly,
      533 U.S. 525 (2001)......................................................................... 5

Medtronic, Inc. v. Lohr,
      518 U.S. 470 (1996)...................................................................... 6, 8

Midlantic Nat'l Bank v. New Jersey Dep't Envt'l Prot.,
      474 U.S. 494 (1986)....................................................................... 16

Musso v. New York State Higher Educ. Servs. Corp. (In re Royal Business
      Sch.), 157 B.R. 932 (Bankr. E.D.N.Y. 1993) ............................... 22

New York State Conference of Blue Cross & Blue Shield Plans v. Travelers
      Ins. Co., 514 U.S. 645 (1995).......................................................... 8

PG&E, 350 F.3d at 947 .......................................................................... 16

PG&E, 350 F.3d at 938 .......................................................................... 15

PG&E, 350 F.3d at 941 .......................................................................... 15

PG&E, 350 F.3d at 943 ............................................................................ 6

PG&E, 350 F.3d at 947-48 ..................................................................... 17

Sprietsma v. Mercury Marine,
      537 U.S. 51 (2002)..................................................................... 8, 20

United States v. Fabe,
      508 U.S. 491 (1993)......................................................................... 7

Witco Corp. v. Beekhuis,
  38 F.3d 682 (3d Cir. 1994) ................................................................................ 6

Woodson v. Scott Paper Co.,
  109 F.3d 913 (3d Cir. 1997) ............................................................................ 10

**State Cases**

General Accident Ins. Co. v. Superior Court,
  55 Cal.App.4th 1444 (1997) .............................................................................. 3

Henkel Corp. v. Hartford Accident and Indemnity Co.,
  29 Cal.4th 934 (2003) ........................................................................................ 2

Quemetco Inc. v. Pacific Auto Ins.,
  24 Cal.App.4th 494 (1994) ............................................................................. 3, 4

**Federal Statutes**

11 U.S.C § 541(c)(1) ........................................................................................... 10

11 U.S.C. § 101(32)(A) ....................................................................................... 17

11 U.S.C. § 101(32)(B) ....................................................................................... 17

11 U.S.C. § 1123(a) ............................................................................................ 15

11 U.S.C. § 1124(2) ............................................................................................ 10

11 U.S.C. § 1142(a) ............................................................................................ 15

11 U.S.C. § 363(l) ............................................................................................... 10

11 U.S.C. § 365(e)(1) ......................................................................................... 10

11 U.S.C. § 365(f)(1) .......................................................................................... 10

11 U.S.C. § 524(g)(2)(B)(i) ................................................................................. 19

15 U.S.C. § 1012 ................................................................................................. 20

15 U.S.C. § 1012(b) .............................................................................................. 7

Supremacy Clause of the Constitution, U.S. Const. art. VI, cl. 2 .......................... 5

U.S.C. § 1123(a)(5) .............................................................................................. 9